1  Joel E. Elkins (SBN 256020)
   jelkins@weisslawllp.com
2  **WEISS LAW**
   611 Wilshire Blvd., Suite 808
3  Los Angeles, CA 90017
   Telephone: (310) 208-2800
4  Facsimile: (310) 209-2348

5  *Counsel for Plaintiff*

6  [Additional Counsel in Signature Block]

7

8  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

9

|  |  |
|---|---|
| STEPHEN BUSHANSKY, derivatively on behalf of Nominal Defendant FRESHWORKS INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| RATHNA GIRISH MATHRUBOOTHAM, ROXANNE S. AUSTIN, JOHANNA FLOWER, SAMEER GANDHI, RANDY GOTTFRIED, ZACHARY NELSON, BARRY PADGETT, JENNIFER TAYLOR, and DENNIS WOODSIDE, | ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) |
| FRESHWORKS INC., | ) ) |
| Nominal Defendant. | ) ) ) |

Civil Action No.

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Stephen Bushansky, by his undersigned attorneys, brings this stockholder derivative action on behalf of nominal defendant Freshworks Inc. ("Freshworks" or the "Company") against the members of the Company's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties, violations of the federal securities

- 1 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

laws, and other misconduct that resulted in material damage to the Company and its stockholders. These allegations are made upon personal knowledge with respect to Plaintiff and, as to all other matters, upon information and belief based upon the investigation and analysis by Plaintiff's counsel, including, among other things, a review of the Company's press releases and public filings with the United States Securities and Exchange Commission ("SEC"), corporate governance documents published on the Company's website, transcripts of Freshworks conference calls with financial analysts and investors, news reports, financial analyst reports, and other publicly available information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.    This is a stockholder derivative action brought against the Freshworks Board for their violations of fiduciary duties and other misconduct, which resulted in substantial damage to the Company and its stockholders.

2.    Freshworks is a software company which provides software-as-service for businesses to improve efficiency and sales and successfully engage with costumers.

3.    In September 2021, Freshworks launched an initial public offering ("IPO") of its shares, reaping more than a billion dollars. In the public filings associated with the IPO, the Company represented that the business was "growing rapidly" and had broad appeal to customers, touting Freshworks' vast untapped market and pointing to its reported revenue growth as evidence of the success of its business model. The Individual Defendants acknowledged the material risks facing the Company in connection with its business plan, including customer retention and expansion, and their need to oversee and monitor those risks.

4.    However, beginning in the fourth quarter of 2021, the Company's representations were given the lie as it reported lower revenue and billings growth, with net retention rates remaining flat or declining.  In the first quarter of 2022, the Company reported a further drop in its revenue and billings growth. Revenue growth dropped 2% and billings growth was down 6% from the fourth quarter of 2021.

5.      In the wake of the disappointing financial news, the Company's stock dropped nearly 6% in two days.

6.      Following the precipitous stock drop, a securities class action was filed in the Northern District of California against the Company, the members of the Freshworks Board at the time of the IPO, Chief Financial Officer ("CFO") Tyler Sloat ("Sloat"), and the underwriters for the Company's IPO. As such, the Company is now subject to substantial liability and will be forced to expend substantial sums to defend itself, as well as its directors and officers.

7.      As a result of the Individual Defendants' breaches of fiduciary duty and other misconduct, Freshworks has sustained substantial damages and irreparable injury to its reputation. Through this action, Plaintiff seeks to recover for the Company its damages and remediate the internal control weaknesses that afflict Freshworks.

8.      Plaintiff did not make a demand prior to bringing this action because it would be futile. The Company's directors are neither disinterested nor independent. In the absence of this action, Freshworks will neither recover its damages nor properly remediate the weaknesses in its internal controls and corporate governance practices and procedures.

## II.    JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), SEC Rule 14a-9 (17 C.F.R. § 240.14a-9) promulgated thereunder, and for contribution claims pursuant to Section 21D of the Exchange Act. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

10.    This Court has jurisdiction over each Defendant named herein because Freshworks maintains its headquarters and does substantial business in this District and, as such, each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

11.    This action is not a collusive one to confer jurisdiction on a court of the United States that it would not otherwise have.

12.    Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), where the Company maintains its headquarters and where it conducts substantial business.

III.    **PARTIES**

A.    **Plaintiff**

13.    Plaintiff Stephen Bushansky purchased Freshworks stock in the Company's IPO and has held Freshworks common stock continuously since that time.  As such, Plaintiff was a shareholder at the time of the transactions complained of herein.

B.    **Defendants**

1.    **Nominal Defendant Freshworks Inc.**

14.    Nominal defendant Freshworks is a Delaware corporation with its principal executive offices located at 2950 S. Delaware Street, Suite 201, San Mateo, CA 94403. The Company's common stock trades on the Nasdaq stock exchange under the symbol "FRSH."

2.    **Individual Defendants**

15.    Defendant Rathna Girish Mathrubootham ("Mathrubootham") is Chairman and Chief Executive Officer ("CEO") of Freshworks since 2010.  Mathrubootham owns 15,835,079 Freshworks Class B common shares and controls 8.11% of the Company's voting power.[1]  Since 2020, Freshworks paid Mathrubootham the following compensation:

| YEAR | SALARY | STOCK AWARDS | NON-EQUTIY INCENTIVE PLAN COMPENSATION | ALL OTHER COMPENSATION | TOTAL |
|------|--------|--------------|----------------------------------------|------------------------|-------|
| 2021 | $315,000 | $233,414,700 | $296,980 | $1,041 | $234,027,721 |
| 2020 | $331,504 | $11,786,715 | $156,274 | N/A | $12,274,493 |

16.    Defendant Roxanne S. Austin ("Austin") is a Freshworks director since May 2021, Chair of the Nominating and Corporate Governance Committee, and a member of the Audit

---

[1]    Each share of Class A common stock is entitled to one vote, and each share of Class B Common Stock is entitled to 10 votes.

Committee. Austin is also a director of Crowdstrike Holdings, Inc. ("Crowdstrike"), a cybersecurity technology company.

17.    Austin owns 656 Freshworks Class A common shares and 137,500 Freshworks Class B common shares. In 2021, the Company paid Austin the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| N/A | $9,505,552 | $9,505,552 |

18.    Defendant Johanna Flower ("Flower") is a Freshworks director since 2020 and is a member of the Nominating and Corporate Governance Committee. Since January 2023, Defendant Flower is a member of Crowdstrike's board of directors. In February 2022, Flower was appointed Crowdstrike's Chief Marketing Officer, a role she previously held from November 2014 to August 2020.

19.    Flower owns 366 Freshworks Class A common shares and 160,920 Freshworks Class B common shares. In 2021, the Company paid Flower the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| N/A | $13,366 | $13,366 |

20.    Defendant Sameer Gandhi ("Gandhi") is a Freshworks director since 2019. He is the Chair of the Compensation Committee and a member of the Nominating and Corporate Governance Committee. Gandhi is a partner at Accel Partners ("Accel"), a venture capital firm that is a significant shareholder of Freshworks and is one of the earliest investors in the Company. Gandhi is also on the board of Crowdstrike and a long-term investor in the company.

21.    Gandhi owns 22,244 Freshworks Class A common shares and 64,425,950 Freshworks Class B common shares and has 33.01% of the Company's total voting power. In 2021, the Company paid Gandhi the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| N/A | $1,986,176 | $1,986,176 |

22.    Defendant Randy Gottfried ("Gottfried") is a Freshworks director since 2019. He is Chair of the Audit Committee and a member of the Compensation Committee. Gottfried owns

191,250 Freshworks Class B common shares.  In 2021, the Company paid Gottfried the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| $15,500 | N/A | $15,500 |

23.    Defendant Zachary Nelson ("Nelson") is a Freshworks director since 2021 and a member of the Audit Committee.  Nelson owns 423 Freshworks Class A common shares and 32,812 Freshworks Class B common shares.  In 2021, the Company paid Nelson the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| N/A | $12,239,948 | $12,239,948 |

24.    Defendant Barry Padgett ("Padgett") is a Freshworks director since 2020 and a member of the Compensation Committee and Nominating and Corporate Governance Committee. Padgett owns 423 Freshworks Class A common shares and 225,000 Freshworks Class B common shares.  In 2021, the Company paid Padgett the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| N/A | $1,988,041 | $1,988,041 |

25.    Defendant Jennifer Taylor ("Taylor") is a Freshworks director since 2021 and a member of the Nominating and Corporate Governance Committee. Taylor serves as Chief Product Officer and Senior Vice President of Products at Cloudflare, Inc. ("Cloudflare"), a website security company.

26.    Taylor owns 328 Freshworks Class A common shares and 46,875 Freshworks Class B common shares.  In 2021, the Company paid Taylor the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| N/A | $15,100,398 | $15,100,398 |

27.    Defendant Dennis Woodside ("Woodside") is President of Freshworks and a Freshworks director since 2022.

## IV.    THE INDIVIDUAL DEFENDANTS' DUTIES

28.    By reason of their positions as officers or directors of Freshworks and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed and owe Freshworks and its shareholders, fiduciary obligations of loyalty, good faith, due care, and candor, and were and are required to use their utmost ability to control, manage, and oversee Freshworks in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Freshworks and its shareholders to benefit all shareholders equally and not in furtherance of their own personal interests or benefit.

29.    The Individual Defendants, because of their positions of control and authority as directors and officers of Freshworks, were able to and did, directly and indirectly, exercise control over the wrongful acts complained of herein.

30.    As senior executive officers and directors of a publicly traded company whose common stock was registered with the SEC and traded on the Nasdaq, the Individual Defendants also owed a duty to ensure the dissemination of accurate, complete, and truthful information concerning Freshworks' financial condition, operations, products, internal controls, and business prospects.  In addition, the Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all material facts so that the market price of the Company's shares would be based upon accurate information.  In order to meet these duties, the Individual Defendants were required to exercise reasonable control and supervision over Freshworks' management, policies, and internal controls.

31.    At all times relevant hereto, the Individual Defendants were the agents of each other and Freshworks and were always acting within the course and scope of such agency.

32.    The Individual Defendants were and are also subject to particularized duties pursuant to specific policies in effect at Freshworks.

### A.    Duties Under Freshworks' Code of Conduct And Ethics

33.    Freshworks' Code of Conduct and Ethics ("Code of Conduct") applies to, among other things, "the directors, executives, employees" of Freshworks.

34.     The Code of Conduct requires compliance with all laws and regulations applicable to Freshworks' business:

> We strive to comply with all applicable laws and regulations. It is your personal responsibility to adhere to the standards and restrictions imposed by those laws and regulations, including those relating to financial and accounting matters. The same applies to policies we adopt, such as this Code. Even if conduct complies with the letter of the law or our policies, we must avoid conduct that will have an adverse effect on the trust and confidence of our customers, partners or investors. Disregard of the law will not be tolerated. Violation of domestic or foreign laws, rules and regulations may subject an individual, as well as Freshworks, to civil and/or criminal penalties.

35.     The Code of Conducts prohibits unethical or illegal business practices: "We strive to outperform our competition fairly and honestly. Advantages over our competitors are to be obtained through superior performance of our products and services, not through unethical or illegal business practices."

36.     The Code of Conduct requires that directors and officers ensure that the Company's disclosures in public communications are full, fair, accurate, timely and understandable:

> The integrity of our records and public disclosure depends upon the validity, accuracy and completeness of the information supporting the entries to our books of account. Therefore, our corporate and business records should be completed accurately and honestly. The making of false or misleading entries, whether they relate to financial results or test results, is strictly prohibited. Our records serve as a basis for managing our business and are important in meeting our obligations to customers, suppliers, creditors, employees and others with whom we do business. As a result, it is important that our books, records and accounts accurately and fairly reflect, in reasonable detail, our assets, liabilities, revenues, costs and expenses, as well as all transactions and changes in assets and liabilities.

37.     Specifically, the Code of Conduct outlines the following guidelines, requiring that, inter alia:

- no entry be made in our books and records that intentionally hides or disguises the nature of any transaction or of any of our liabilities or misclassifies any transactions as to accounts or accounting periods;

- transactions be supported by appropriate documentation;

- the terms of sales and other commercial transactions be reflected accurately in the documentation for those transactions and all such documentation be reflected accurately in our books and records; and

- directors and officers comply with the laws, rules and regulations governing the Company's operations.

38.    The Code of Conduct discusses the importance of complete, truthful, and accurate recordkeeping and disclosure in preparing or verifying SEC filings:

> Our accounting records are also relied upon to produce reports for our management, stockholders and creditors, as well as for governmental agencies. In particular, we rely upon our accounting and other business and corporate records in preparing the periodic and current reports that we file with the SEC. Securities laws require that these reports provide full, fair, accurate, timely and understandable disclosure and fairly present our financial condition and results of operations. Employees who collect, provide or analyze information for or otherwise contribute in any way in preparing or verifying these reports should strive to ensure that our financial disclosure is accurate and transparent and that our reports contain all of the information about Freshworks that would be important to enable stockholders and potential investors to assess the soundness and risks of our business and finances and the quality and integrity of our accounting and disclosures.

39.    The Code of Conduct prohibits authorizing or taking any action "that would intentionally cause our financial records or financial disclosure to fail to comply with generally accepted accounting principles, the rules and regulations of the SEC or other applicable laws, rules and regulations."

40.    Further, the Code of Conduct states that no director or officer "should knowingly make (or cause or encourage any other person to make) any false or misleading statement in any of our reports filed with the SEC or knowingly omit (or cause or encourage any other person to omit) any information necessary to make the disclosure in any of our reports accurate in all material respects."

41.    The Code of Conduct requires that all directors, officers, and employees "who become aware of any departure from these standards has a responsibility to report his or her knowledge promptly to their manager, the Compliance Officer, the Audit Committee or one of the other compliance resources described in our Whistleblower Policy on reporting complaints regarding accounting and auditing matters."

**B.    Additional Duties Under The Corporate Governance Guidelines**

42.    The Corporate Governance Guidelines details additional obligations for serving on the Committee: "[T]he Board has responsibilities to review, approve and monitor fundamental

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

financial and business strategies, assess our major risks, and consider ways to address those risks, select and oversee management, and establish and oversee processes to maintain our integrity."

**C.    Additional Duties Of Audit Committee Members**

43.    The Audit Committee Charter sets forth additional duties for members of the Audit Committee and provides that members are obligated to assist the Board in its oversight of, among other things, the Company's risk management practices and policies; the integrity of the Company's financial statements; the Company's compliance with legal and regulatory requirements; and the effectiveness and performance of the Company's internal audit function.

44.    The Audit Committee has additional powers and obligations, including:

- Reviewing Freshworks' annual audited and quarterly financial statements and the financial information included in its annual and quarterly reports on Forms 10-K and 10-Q, including the disclosures in "Management's Discussion and Analysis of Financial Condition and Results of Operations";

- Reviewing the applicable reports and certifications regarding internal control over financial reporting and disclosure controls and procedures;

- Reviewing and discussing significant events, and transactions, as well as major issues regarding accounting principles and financial statement presentations, including any significant changes in Freshworks' selection, application or disclosure of critical accounting policies, principles, practices, judgments or estimates;

- Reviewing any significant disagreements between management and the independent auditor;

- Reviewing and discussing with management and the independent auditor the adequacy and effectiveness of Freshworks' internal controls, including any changes, significant deficiencies or material weaknesses in those controls reported by the independent auditor or management, any special audit steps adopted in light of significant control deficiencies, and any fraud, whether or not material, that involves management other Freshworks employees who have a significant role in Freshworks' internal controls;

- Reviewing and discussing the adequacy and effectiveness of Freshworks' disclosure controls and procedures, and review the charter of any disclosure committee established by Freshworks;

- Reviewing and discussing with management, the internal auditors, if applicable, and the independent auditor Freshworks' major financial risk exposures and the steps management has taken to monitor and control those exposures, including Freshworks' guidelines and policies with respect to risk assessment and risk management pertaining to financial, accounting, legal, compliance, investment and tax matters, including antifraud measures.

**D.     Additional Duties of Nominating and Corporate Governance Members**

45.     The Charter of the Nominating and Corporate Governance Committee sets forth additional duties for its members, including obligations relating to overseeing the development and adequacy of the Corporate Governance Guidelines, including:

- Developing and recommending to the Board a set of corporate governance guidelines applicable to Freshworks;

- Periodically reviewing the corporate governance guidelines approved by the Board and their application, and recommend any changes deemed appropriate to the Board for its consideration; and

- Overseeing Freshworks' corporate governance practices, including reviewing and recommending to the Board for approval any changes to Freshworks' corporate governance framework, including its certificate of incorporation, bylaws and Code of Business Conduct & Ethics.

**V.     SUBSTANTIVE ALLEGATIONS**

**A.     Background**

46.     Freshworks produces software for businesses to support customer engagement. According to the Company's website, Freshworks is focused on providing "intuitive and modern products designed with the end-user in mind."

47.     Freshworks was co-founded in 2010 by Defendant Mathrubootham under the name Freshdesk Inc.  Since its inception, the Company has continued to expand its product offerings.  In 2017, the Company rebranded and changed its name to Freshworks Inc.

48.     On August 27, 2021, the Company filed a draft registration statement.   On September 21, 2021, after a final amendment, the SEC declared the Registration Statement effective (the "IPO Registration Statement").

49.     On September 22, 2021, the Company launched its IPO, offering 28.5 million shares of its common stock at $36 per share and raising over $1 billion.

**B.    The Individual Defendants Knew The Material Risks Regarding Freshworks' Core Operations**

50.    In the IPO Registration Statement, the Company represented that in order to achieve profitability, it needed to attract new customers, convert those using free trial versions of the Company's products into paying customers, and expand usage of its products:

> To increase our revenue and achieve profitability, we must increase our customer base through various methods, including but not limited to, adding new customers, converting customers using our free trial versions into paying customers, and expanding usage within and across organizations within existing customers. We encourage customers on our free trial version to upgrade to paid subscription plans and customers of our base level paid plans to upgrade to plans with more features and to incorporate add-ons. Additionally, we seek to expand within organizations by adding new users, having organizations upgrade their plans, or expanding their use of our products into other departments within the organization.

51.    In the Registration Statement, the Individual Defendants acknowledged their awareness of the material risks that could impede Freshworks' ability to attract new customers:

> While we have experienced significant growth in the number of customers on our products, we do not know whether we will continue to achieve similar customer growth rates in the future. Numerous factors may impede our ability to add new customers, convert customers using our free trial versions into paying customers, expand usage within organizations, and sell subscriptions to our products, including but not limited to, our failure to attract, retain, and effectively train and motivate new sales and marketing personnel, develop or expand relationships with our partners, compete effectively against alternative products or services, successfully deploy new features and integrations, provide a quality customer experience and customer support, or ensure the effectiveness of our marketing programs.

> In addition, because many of our new customers originate from word-of-mouth and other non-paid referrals from existing customers, we must ensure that our existing customers continue using our products in order for us to benefit from those referrals.

52.    The Individual Defendants further acknowledged that they knew that the ability to attract new customers was directly tied to the Company's introduction of new features and enhancements:

> Our ability to attract new customers and increase revenue from existing customers depends in large part on our ability to continually enhance and improve our products and the features, integrations, and capabilities we offer, and to introduce compelling new features, integrations, and capabilities that reflect the changing nature of our market.  Accordingly, we must continue to invest in research and development and in our ongoing efforts to improve and enhance our products.  The success of any enhancement to our products depends on several factors, including timely completion and delivery, competitive pricing, adequate quality testing, integration with existing technologies, and overall market acceptance.  Any new

features, integrations, and capabilities that we develop may not be introduced in a timely or cost-effective manner, may contain errors, failures, vulnerabilities, or bugs, or may not achieve the market acceptance necessary to generate significant revenue.

53.    The Individual Defendants acknowledged their awareness of the material risks connected to a downturn in customer retention:

Our business is subscription based, and customers are not obligated to and may not renew their subscriptions after their existing subscriptions expire. In order for us to maintain or improve our operating results, it is important that our customers renew their subscriptions…and add additional users to their subscriptions. Our customers have no obligation to renew their subscriptions, and we cannot ensure that customers will renew subscriptions with a similar contract period, with the same or greater number of users, or for the same or upgraded level of subscription plan…. If customers do not renew their subscriptions, renew on less favorable terms, or fail to add more users, or if we fail to upgrade trial customers to our paid subscription plans, or expand the adoption of our products within and across organizations, our revenue may decline or grow less quickly than anticipated, which would harm our business, results of operations, and financial condition.

54.    The Individual Defendants also acknowledged that they knew of the material risks connected to internal control weaknesses:

As a public company, we will be subject to the reporting requirements of the Securities Exchange Act of 1934, as amended (Exchange Act), the Sarbanes-Oxley Act, and the rules and regulations of the applicable Nasdaq listing standards…. The Sarbanes-Oxley Act requires, among other things, that we maintain effective disclosure controls and procedures and internal control over financial reporting.

***

[W]eaknesses in our disclosure controls and internal control over financial reporting may be discovered in the future. Any failure to develop or maintain effective controls or any difficulties encountered in their implementation or improvement could harm our results of operations or cause us to fail to meet our reporting obligations and may result in a restatement of our consolidated financial statements for prior periods. Any failure to implement and maintain effective internal control over financial reporting also could adversely affect the results of periodic management evaluations and annual independent registered public accounting firm attestation reports regarding the effectiveness of our internal control over financial reporting that we will eventually be required to include in our periodic reports that will be filed with the SEC. Ineffective disclosure controls and procedures and internal control over financial reporting could also cause investors to lose confidence in our reported financial and other information, which would likely have a negative effect on the trading price of our Class A common stock. In addition, if we are unable to continue to meet these requirements, we may not be able to remain listed on Nasdaq…. Any failure to maintain effective disclosure controls and internal control over financial reporting could harm our business,

results of operations, and financial condition and could cause a decline in the trading price of our Class A common stock.

**C.     The Company Represents That Revenue And Retention Are Increasing**

55.     In the IPO Registration Statement, the Company repeatedly touted the growth of Freshworks, including the fact that it had "grown rapidly" in the months and years prior to the IPO.

56.     The Company represented that it would continue investing in customer growth and emphasized that "its approach to acquiring new customers" allowed the Company "to benefit from user-driven, organic adoption of our products across organizations of all sizes" and enabled Freshworks' customers "to standardize on our products across the organization."

57.     The Company pointed to the increased percentage of customers contributing more than $5,000 to Annual Recurring Revenue ("ARR") as demonstrating the "broad appeal" of the Company's products to "customers of all sizes and geographies":

> As of June 30, 2021, 13,326 of our customers contributed more than $5,000 in ARR, demonstrating the broad appeal of our products to customers of all sizes and geographies, and as of December 31, 2019, December 31, 2020, and June 30, 2021, customers contributing more than $5,000 in ARR represented 78%, 82%, and 84% of total ARR, respectively. We believe that the number of customers that contribute more than $5,000 in ARR is an indicator of our success in expanding upmarket to larger businesses.

58.     The Company represented that its "healthy net dollar retention rate of 118% as of June 30, 2021" evidenced the merits of its business model:

> We measure the rate of expansion within our customer base using net dollar retention rate, and we believe that our net dollar retention rate demonstrates a significant rate of expansion within our existing customer base. As of June 30, 2021, our net dollar retention rate was 118%. Our net dollar retention rate as of March 31, 2019, June 30, 2019, September 30, 2019, December 31, 2019, March 31, 2020, June 30, 2020, September 30, 2020, December 31, 2020, and March 31, 2021 was 110%, 113%, 113%, 115%, 113%, 107%, 109%, 111%, and 112%, respectively.

59.     Freshworks touted the large, untapped market for its products within its existing customer base and beyond:

> ***We have a significant opportunity to expand within our existing customer base and substantially increase the number of customers that purchase multiple***

***Freshworks products***.[2]  As of June 30, 2021, approximately 18% of our customers purchased two or more Freshworks products, which includes customers on our Freshdesk Omnichannel Suite and Freshsales Suite subscription plans counting as customers who purchased multiple products.  These customers represented approximately 45% of our ARR as of June 30, 2021, illustrating the large opportunity we have to sell additional products to our current customer base and drive growth.

* * *

***We believe that our market remains largely underserved.***  We intend to invest aggressively in our direct and indirect sales and marketing capabilities, including investments in our outbound sales motion….  We plan to support more languages, recruit partners, hire sales and customer experience personnel in additional countries as needed, and expand our presence in countries where we already operate.  A critical part of our go-to-market strategy has been our broad and diverse set of partners that enrich our offerings, scale our geographic coverage, and help us reach a broader audience than we would be able to reach on our own, thus amplifying our go-to-market investments.  We plan to continue to invest in growing our partner ecosystem to fuel additional customer acquisition and expand use cases within our existing customer base.

**D.      Freshwork Reports Decelerating Revenue Growth And Billings**

60.      On February 10, 2022, the Company filed with the SEC a Current Report on Form 8-K and attached a press release announcing the Company's fourth quarter financial results.  In the press release, the Company reported decelerating revenue growth of 44% year over year and flat calculated billings growth.  Further, the Company's adjusted loss from operations increased to $10.7 million from the $2.3 million loss reported in the prior-year period.

61.      In a conference call with financial analysts and investors that day, CFO Tyler Sloat stated that net retention would decrease going forward:

> ***So net dollar retention, to start off, we did say something on the call there that we do expect that to decrease a little bit.***  The net dollar retention churn, there's two sides of that coin.  We've been pretty open that we had made really good progress on gross churn over the last couple of years.  In Q3 and Q4 of this past year, churn kind of remained stable and just essentially stayed flat….
>
> The expansion motion, you guys know our base form of upsell is agent addition….  And we expect to continue to see pressure on that.  And that is what's driving the net dollar retention down.  And, yeah, we said it could come down in Q2 – in Q1.  It could come down a little bit after that in Q2.  But obviously we're going to work as hard as we can to normalize that.

---

[2]      Unless otherwise indicated, all emphasis herein is added.

62.     On May 3, 2022, the Company filed with the SEC a Current Report on Form 8-K attaching a press release announcing the Company's first quarter financial results.  In the press release, the Company reported that revenue growth continued to decelerate to 42% and billings growth slowed further to 35%.

63.     In a conference call with financial analysts and investors the same day, CFO Sloat discussed the continued flat billings growth and attributed the stagnant growth to fewer large deals:

> ***From a new business perspective, billings growth was impacted by a lower number of large deals closed in the quarter.***  While we added a healthy number of new customers in Q1, the average customer size was smaller compared to [the] prior quarter as our field operations continue to build out and ramp up productivity for the mid-market and larger customers.  We're also seeing a very competitive hiring environment on the go-to-market side, especially in Europe.  So this has impacted our sales realization in that region.

64.     On the call, Defendant Mathrubootham downplayed the decelerating growth:

> I just would like to remind everyone here that at Freshworks, we don't hunt for elephants.  We hunt for deer and rabbits.  They're focused squarely on mid-market and SMB customers.

> So a lot of times when we land, we are not specifically managing to a greater than 50k number.  So that I would like to -- we are confident that, that will give us the opportunity to expand into larger deals over time.

65.     When a Barclays analyst on the call pressed CFO Sloat on the reduced billings growth, Sloat sidestepped the issue, emphasized that billings are "unpredictable":

> Billings has a lot of nuances to it.  So we kind of call it as we see it.

> We can make some estimates.  But as billings come in -- as new deals close, right, they're going to have different mixes in terms of whether they're paid annually or whatnot.  Our expansion motion is actually pretty unpredictable as how it relates to billings, because as you can imagine, if a customer is expanding and they're on an annual deal that often results in a stub payment, not a full annual payment.  So we kind of -- we look at it, we can kind of estimate.

> And based on what we see -- we are a little bit cautious just based on the macroeconomic environment.  In Europe, I don't know if anybody knows what's really going to happen.  We are a little bit – we're cautious.  We're tentative.

66.     With regard to the second quarter 2022, Sloat admitted "that we would expect it to be a little bit less growth rate than we had in Q1."

- 16 -

67.     On August 2, 2022, the Company filed with the SEC a Current Report on Form 8-K attaching a press release disclosing the financial results for the second quarter 2022.  The press release revealed that the Company's revenue growth decelerated further to "40% adjusting for constant currency."  The net dollar retention rate remained flat from the previous quarter and dropped 3% from the same period the previous year.

68.     The following day, in a conference call with financial analysts and investors, CFO Sloat reported that billings grew by only 33% in the quarter. Sloat provided billings guidance for the third quarter: "We estimate our reported calculated billings to grow approximately 25% in Q3."

69.     On November 1, 2022, the Company filed with the SEC a Current Report on Form 8-K and attached a press release disclosing the financial results for the third quarter 2022.  In the press release, the Company revealed further deceleration of revenue growth to "37% adjusting for constant currency."  Net dollar retention rate was down to 113% from 117% in the same period the previous year.

70.     In a Current Report on Form 8-K filed with the SEC on the same day, the Company announced that Freshworks' Chief Revenue Officer, Jose Morales, would be leaving the Company effective November 18, 2022.

71.     The Company's stock is currently trading about 70% below its IPO price.

**E.      Freshworks Is Sued In A Securities Class Action Lawsuit**

72.     On November 1, 2022, a securities class action lawsuit was filed in the United States District Court for the Northern District of California captioned *Sundaram v. Freshworks Inc. et al.*, No. 3:22-cv-06750-CRB (N.D. Cal.) against the Company, Defendants Mathrubootham, Austin, Flower, Gandhi, Gottfried, Nelson, Padgett, and Taylor, CFO Sloat, and the underwriters for the Company's IPO, alleging violations of Sections 11, 12 (a), and 15 of the Securities Act of 1933 (the "Securities Act").

Sundaram seeks damages on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, Freshworks common stock issued in connection with the

Company's IPO, Freshworks' net dollar retention rate had plateaued while its revenue growth rate and billings were, in fact, decelerating.

### F.   Freshworks' False And Misleading Proxy Statement

73.   On April 11, 2022, the Company filed its 2022 Proxy Statement with the SEC soliciting shareholder votes to, among other things, re-elect Defendant Flower, Gottfried, and Padgett to the Board.  The Proxy Statement was authorized by the Board and signed by Defendant Mathrubootham.

74.   The 2022 Proxy Statement represents that the Board oversees and monitors the Company's risk exposures:

> **Role of the Board in Risk Oversight**
>
> Our board of directors oversees our risk management processes, which are designed to support the achievement of organizational objectives, improve long-term organizational performance, and enhance stockholder value while mitigating and managing identified risks.  A fundamental part of our approach to risk management is not only understanding the most significant risks we face as a company and the necessary steps to manage those risks, but also deciding what level of risk is appropriate for our company.  Our board of directors plays an integral role in guiding management's risk tolerance and determining an appropriate level of risk.
>
> ***
>
> In connection with its reviews of the operations of our business, our full board of directors addresses holistically the primary risks associated with our business….

75.   The 2022 Proxy Statement represents that the Audit Committee is engaged in vigorous oversight over risks to the Company, the adequacy of the Company's internal controls, and compliance with all legal and regulatory requirements:

> Our audit committee monitors our major financial, reporting, and cybersecurity risks, and the steps our management has taken to identify and control these exposures, including by reviewing and setting guidelines, internal controls, and policies that govern the process by which risk assessment and management is undertaken.  Our audit committee also monitors compliance with legal and regulatory requirements, and directly supervises our internal audit function.

76.   The 2022 Proxy Statement represents that the Nominating and Corporate Governance Committee "monitors the effectiveness of our corporate governance guidelines and provides general oversight of our other corporate governance policies and practices."

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

77.     The foregoing statements in the 2022 Proxy Statement were false and misleading and omitted material information.  Contrary to the representations made in the Proxy, the Board was required, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Freshworks' core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

78.     On June 3, 2022, Freshworks filed with the SEC a Current Report on Form 8-K announcing, among other things, the reelection of Defendants Flower, Gottfried, and Padgett to the Board pursuant to the solicitations in the 2022 Proxy Statement.

## VI.    DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

79.     Plaintiff brings this action derivatively and for the benefit of Freshworks to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and officers of Freshworks, and violations of Section 14(a) of the Exchange Act, contribution for violations of 21D of the Exchange Act, as well as the aiding and abetting thereof.

80.     Freshworks is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

81.     Plaintiff is, and has been at all relevant times, a stockholder of Freshworks and was a stockholder of the Company at the time of the transactions alleged herein.  Plaintiff will adequately and fairly represent the interests of Freshworks in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to prosecute this action.

82.     Demand upon the Board to institute this action against the Individual Defendants would be futile and is, therefore, excused.  The Board is neither disinterested nor independent.

**A.    Demand Upon Defendant Mathrubootham Is Excused**

83.    Mathrubootham is a co-founder of Freshworks, CEO since October 2010, and Chairman of the Board since May 2021.  Mathrubootham therefore is not independent.  Indeed, Freshworks' 2022 Proxy Statement does not list Mathrubootham as an independent director.

84.    As an employee of Freshworks, the Company provides Defendant Mathrubootham with his principal occupation from which he receives substantial compensation, including $234,027,721 in 2021 and $12,274,493 in 2020.  Thus, Mathrubootham could not consider a demand for action that might require him to sue the directors who control his continued employment or fellow members of management with whom he works on a day-to-day basis.

85.    Mathrubootham will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments.  As of March 31, 2022, Mathrubootham beneficially owns 15,835,079 Freshworks Class B common shares, giving him 8.11% voting control of the Company.  If Mathrubootham acknowledged that he, Freshworks, or others engaged in misconduct, his investment in Freshworks would be substantially devalued and his lucrative position jeopardized.  Acknowledging that executives at Freshworks engaged in the wrongdoing alleged would be an admission that he, as a principal executive officer of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

86.    Defendant Mathrubootham is named as a defendant in the pending Securities Class Action.  As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

87.    Gandhi and Mathrubootham have a long-standing personal and business relationship which prevents them from acting in an independent and disinterested manner.  Gandhi, through work as a partner at Accel Partners, a venture capital firm, supported Freshworks and Mathrubootham since 2011, investing in every fundraising round.[3]

---

[3]    Following Freshworks' stock listing, Accel's initial investment has likely risen more than 200-fold; its total ownership stake is now worth $3.1 billion.  *See* https://www.globalindiantimes.com/globalindiantimes/2021/9/23/freshworks-girish-mathrubootham.

88.    Mathrubootham signed the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

89.    Mathrubootham, as a director of Freshworks, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Freshworks' core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

90.    Mathrubootham is neither disinterested nor independent.  Any demand upon Defendant Mathrubootham is futile and, thus, excused.

**B.    Demand Upon Defendant Austin Is Excused**

91.    Austin received $9,505,552 in compensation in the form of stock awards for her service as a director in 2021.  Austin earns compensation far in excess of the compensation that directors earn at companies of similar size to Freshworks.  For example, according to FW Cook's 2021 director compensation survey, the director compensation per year at a mid-cap company in the 75th percentile is $275,000.[4]  As such, Austin earns 3,356% more than an average director at a similarly sized company.

92.    Austin will not sue those responsible for the wrongdoing pled herein because doing so would harm her and her investments.  As of March 31, 2022, Austin beneficially owns 656 Freshworks Class A common shares and 137,500 Freshworks Class B common shares.  If Austin acknowledged that she, Freshworks, or others engaged in misconduct, her investment in Freshworks would be substantially devalued and her lucrative position jeopardized. Acknowledging that executives at Freshworks engaged in the wrongdoing alleged would be an

---

[4]    The FW Cook survey defines a mid-cap company as one with a market capitalization of between $2 billion and $10 billion. Freshworks' current market capitalization is $4.37 billion which is more than one billion dollars less than the mid-cap companies in the 75th percentile.

admission that she, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

93.    Defendant Austin is named as a defendant in the pending Securities Class Action. As such, she is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

94.    Defendants Austin, Gandhi, and Flower have a long-standing business relationship, which precludes them from acting in an independent and disinterested manner.  Austin and Gandhi are members of the Board of Directors of Crowdstrike Holdings, Inc., a cybersecurity technology company. Gandhi is a large investor in Crowdstrike since 2013, investing over $55 million in the company.[5]  Since January 2023, Defendant Flower is a member of Crowdstrike's board of directors.  In February 2022, Flower was appointed Crowdstrike's Chief Marketing Officer, a role she previously held from November 2014 to August 2020. .

95.    Austin authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

96.    Austin, as a director of Freshworks, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Freshworks' core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

97.    Austin, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Freshworks' compliance with relevant laws, rules, and regulations. Austin utterly failed to perform these essential duties.

---

[5] Sameer Gandhi, July 16, 2015, https://www.linkedin.com/pulse/investing-future-cybersecurity-sameer-gandhi/.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

98.    Austin failed to uphold her additional obligations as Chair of the Nominating and Corporate Governance Committee, which include, inter alia, ensuring the implementation and effectiveness of the Code of Conduct and Corporate Governance Guidelines.

99.    Austin is neither disinterested nor independent.  Any demand upon Defendant Austin is futile and, thus, excused.

**C.    Demand Upon Defendant Flower Is Excused**

100.    Flower received $1,986,176 in compensation in the form of stock awards for her service as a director in 2021.  Flower earns compensation far in excess of the compensation that directors earn at even larger companies.  For example, according to FW Cook's 2021 director compensation survey, the director compensation per year at a mid-cap company in the 75th percentile is $275,000.  As such, Flower earns 622% more than an average director at a similarly-sized company.

101.    Flower will not sue those responsible for the wrongdoing pled herein because doing so would harm her and her investments.  As of March 31, 2022, Flower beneficially owns 366 Freshworks Class A common shares and 160,920 Freshworks Class B common shares.  If Flower acknowledged that she, Freshworks, or others engaged in misconduct, her investment in Freshworks would be substantially devalued and her lucrative position jeopardized. Acknowledging that executives at Freshworks engaged in the wrongdoing alleged would be an admission that she, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

102.    Defendant Flower is named as a defendant in the pending Securities Class Action. As such, she is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

103.    Flower authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

104.    Flower benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing her re-election to the Freshworks Board through the false and misleading statements and material omissions in the 2022 Proxy Statement.

105.    Defendants Austin, Gandhi, and Flower have a long-standing business relationship, which precludes them from acting in an independent and disinterested manner.  Since January 2023, Defendant Flower is a member of Crowdstrike's board of directors.  In February 2022, Flower was appointed Crowdstrike's Chief Marketing Officer, a role she previously held from November 2014 to August 2020.  Austin and Gandhi are also members of Crowdstrike's board of directors.  Gandhi is a large investor in Crowdstrike since 2013, investing over $55 million in the company.  As such, Flower depends upon Gandhi and Austin to approve her compensation, including salary and bonus, and she cannot act with independence or disinterest.

106.    Flower, as a director of Freshworks, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Freshworks' core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

107.    Flower is neither disinterested nor independent.  Any demand upon Defendant Flower is futile and, thus, excused.

**D.    Demand Upon Defendant Gandhi Is Excused**

108.    Gandhi will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments.  As of March 31, 2022, Gandhi beneficially owns 22,244 Freshworks Class A common shares and 64,425,950 Freshworks Class B common shares, giving him approximately 33% voting control of the Company.  If Gandhi acknowledged that he, Freshworks, or others engaged in misconduct, his investment in Freshworks would be substantially devalued and his lucrative position jeopardized.  Acknowledging that executives at Freshworks

engaged in the wrongdoing alleged would be an admission that he, as a long-time investor and director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

109.    Further, Gandhi has invested in Freshworks since 2011 through Accel Partners, a venture capital firm where he is a partner.  Accel led Freshworks' seed investment in 2011 as the first investor in the company and participated in or led every subsequent round.[6]  Currently, Accel owns 64,425,950 Freshworks Class B Common Shares or approximately 33% of the Company's voting control and Gandhi controls these shares.  If Gandhi acknowledged that he, Freshworks, or others engaged in misconduct, it would undermine Gandhi and Accel's credibility and weaken their ability to attract future business.

110.    Defendants Austin, Gandhi, and Flower have a long-standing business relationship, which precludes them from acting in an independent and disinterested manner.  Austin and Gandhi are members of Crowdstrike's board of directors.  Gandhi has been a large investor in Crowdstrike since 2013, investing over $55 million in the company.  Since January 2023, Defendant Flower is a member of Crowdstrike's board of directors.  In February 2022, Flower was appointed Crowdstrike's Chief Marketing Officer, a role she previously held from November 2014 to August 2020.

111.    Further, Gandhi and Mathrubootham have a long-standing personal and business relationship which prevents them from acting in an independent and disinterested manner.  In Gandhi's words:[7]

> In our journey together with Freshworks over the last decade, we have grown to admire and appreciate how special a founder Girish is.  Known as G, Girish is the type of entrepreneur you hope to work with but rarely see; someone who has the innate ability to inspire with his vision, chart a course on how to get to the destination, persevere with positivity along the way, and bring along everyone else with a special camaraderie forged by purpose, all while remaining true to himself with authenticity, humility, and real generosity.

---

[6]    Sameer Gandhi et al., *FRSH: A Decade of Aspirations and Accomplishments*, September 22, 2021, https://www.accel.com/noteworthy/frsh-a-decade-of-aspirations-and-accomplishments.

[7]    *Id.*

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

112.    Defendant Gandhi is named as a defendant in the pending Securities Class Action. As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

113.    Gandhi authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

114.    Gandhi, as a director of Freshworks, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Freshworks' core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

115.    Gandhi failed to uphold his additional obligations as a member of the Nominating and Corporate Governance Committee, which include, inter alia, ensuring the implementation and effectiveness of the Code of Conduct and Corporate Governance Guidelines.

116.    Gandhi is neither disinterested nor independent.  Any demand upon Defendant Gandhi is futile and, thus, excused.

**E.    Demand Upon Defendant Gottfried Is Excused**

117.    Gottfried will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments.  As of March 31, 2022, Gottfried beneficially owns 191,250 Freshworks Class B common shares.  If Gottfried acknowledged that he, Freshworks, or others engaged in misconduct, his investment in Freshworks would be substantially devalued and his lucrative position jeopardized.  Acknowledging that executives at Freshworks engaged in the wrongdoing alleged would be an admission that he, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

118.    Defendant Gottfried is named as a defendant in the pending Securities Class Action. As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

119.    Gottfried authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

120.    Gottfried benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing his re-election to the Freshworks Board through the false and misleading statements and material omissions in the 2022 Proxy Statement.

121.    Gottfried, as a director of Freshworks, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Freshworks' core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

122.    Gottfried, as Chair of the Audit Committee, had duties regarding oversight of the risks facing the Company and Freshworks' compliance with relevant laws, rules, and regulations. Gottfried utterly failed to perform these essential duties.

123.    Gottfried is neither disinterested nor independent.  Any demand upon Defendant Gottfried is futile and, thus, excused.

**F.      Demand Upon Defendant Nelson Is Excused**

124.    Nelson will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments.  As of March 31, 2022, Nelson beneficially owns 423 Freshworks Class A common shares and 32,812 Freshworks Class B common shares.  If Nelson acknowledged that he, Freshworks, or others engaged in misconduct, his investment in Freshworks would be substantially devalued and his lucrative position jeopardized.  Acknowledging that executives at Freshworks engaged in the wrongdoing alleged would be an admission that he, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

125.    Defendant Nelson is named as a defendant in the pending Securities Class Action. As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

126.    Nelson authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

127.    Nelson, as a director of Freshworks, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Freshworks' core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

128.    Nelson, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Freshworks' compliance with relevant laws, rules, and regulations. Nelson utterly failed to perform these essential duties.

129.    Nelson is neither disinterested nor independent.  Any demand upon Defendant Nelson is futile and, thus, excused.

**G.    Demand Upon Defendant Padgett Is Excused**

130.    Padgett received $12,239,948 in compensation in the form of stock awards for his service as a director in 2021.  Padgett earns compensation far in excess of the compensation that directors earn at even larger companies.  For example, according to FW Cook's 2021 director compensation survey, the director compensation per year at a mid-cap company in the 75th percentile is $275,000.  As such, Padgett earns 4,350% more than an average director at a similarly sized company.

131.    Padgett will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments.  As of March 31, 2022, Padgett beneficially owns 437 Freshworks Class A common shares and 225,000 Freshworks Class B common shares. If Padgett acknowledged that he, Freshworks, or others engaged in misconduct, his investment in Freshworks would be substantially devalued and his lucrative position jeopardized.  Acknowledging that executives at Freshworks engaged in the wrongdoing alleged would be an admission that he, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

132.    Defendant Padgett is named as a defendant in the pending Securities Class Action. As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

133.    Padgett authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

134.    Padgett benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing his re-election to the Freshworks Board through the false and misleading statements and material omissions in the 2022 Proxy Statement.

135.    Padgett, as a director of Freshworks, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Freshworks' core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

136.    Padgett failed to uphold his additional obligations as a member of the Nominating and Corporate Governance Committee, which include, *inter alia*, ensuring the implementation and effectiveness of the Code of Conduct and Corporate Governance Guidelines.

137.    Padgett is neither disinterested nor independent.  Any demand upon Defendant Padgett is futile and, thus, excused.

**H.    Demand Upon Defendant Taylor Is Excused**

138.    Taylor received $1,988,041 in compensation in the form of stock awards for her service as a director in 2021.  Taylor earns compensation far in excess of the compensation that directors earn at even larger companies.  For example, according to FW Cook's 2021 director compensation survey, the director compensation per year at a mid-cap company in the 75th percentile is $275,000.  As such, Taylor earns 622% more than an average director at a similarly sized company.

139.     Taylor will not sue those responsible for the wrongdoing pled herein because doing so would harm her and her investments.  As of March 31, 2022, Taylor beneficially owns 656 Freshworks Class A common shares and 137,500 Freshworks Class B common shares. If Taylor acknowledged that she, Freshworks, or others engaged in misconduct, her investment in Freshworks would be substantially devalued and her lucrative position jeopardized. Acknowledging that executives at Freshworks engaged in the wrongdoing alleged would be an admission that she, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

140.     Defendant Taylor is named as a defendant in the pending Securities Class Action. As such, she is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

141.     Taylor serves as Chief Product Officer and Senior Vice President of Products at Cloudflare, Inc., a website security company.  Cloudflare and Crowdstrike are partners and the products both companies offer are complementary.[8]  Defendant Austin, Gandhi, and Flower are all connected to  Crowdstrike either through their work at the company or through investments. As such, Defendant Taylor cannot consider a demand with the required independence and disinterest because of the potential of jeopardizing this lucrative partnership.

142.     Taylor authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

143.     Taylor, as a director of Freshworks, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Freshworks' core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

---

[8]     https://www.cloudflare.com/press-releases/2022/cloudflare-crowdstrike-expand-zero-trust-partnership/.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

144.    Taylor failed to uphold her additional obligations as a member of the Nominating and Corporate Governance Committee, which include, *inter alia*, ensuring the implementation and effectiveness of the Code of Conduct and Corporate Governance Guidelines.

145.    Taylor is neither disinterested nor independent.  Any demand upon Defendant Taylor is futile and, thus, excused.

### I.    Demand Upon Defendant Woodside Is Excused

146.    Woodside is President of Freshworks. Woodside therefore is not independent.

147.    As an employee of Freshworks, the Company provides Defendant Woodside with his principal occupation from which he receives substantial compensation, including an annual base salary of 500,000, a performance bonus of up to $500,000, equity awards with the value of 25,000,000, and option awards with the value of $15,000,000.  Thus, Woodside could not consider a demand for action that might require him to sue the directors who control his continued employment or fellow members of management with whom he works on a day-to-day basis.

148.    Woodside, as a director of Freshworks, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Freshworks' core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

149.    Woodside is neither disinterested nor independent. Any demand upon Defendant Woodside is futile and, thus, excused.

### J.    Other Factors Demonstrating That Demand Upon The Freshworks Board Is Excused

150.    Freshworks has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Board has not caused the Company to take action to recover for the Company the damages it has suffered and will continue to suffer thereby.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

151.    The members of the Board received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board. They have thus benefited from the wrongs herein alleged and have engaged therein to preserve their positions of control and the perquisites thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

152.    Publicly traded companies, such as Freshworks, typically carry director & officer liability insurance from which the Company could potentially recover some or all its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that will foreclose a recovery from the insurers if the Individual Defendants sue each other to recover Freshworks' damages.

## VII.    CLAIMS FOR RELIEF

<u>**COUNT ONE**</u>
**Against the Individual Defendants for**
**Violations of Section 14(a) of the Exchange Act**

153.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

154.    The Section 14(a) claim alleged herein is based solely on negligence.  It is not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claim alleged herein does not allege and does not sound in fraud.  Plaintiff specifically disclaims any allegations of reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to those non-fraud claims.

155.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

156.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

157.    The 2022 Proxy Statement was materially false and misleading because the Individual Defendants were required, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Freshworks' core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

158.    The misleading information contained in the 2022 Proxy Statement was material to Freshworks shareholders in determining whether to elect Defendants Flower, Gotfried, and Padgett to the Board.

159.    The material misstatements and omissions in the 2022 Proxy Statement damaged the Company.

160.    Plaintiff, on behalf of Freshworks, seeks relief for damages inflicted upon the Company based on the misleading 2022 Proxy Statement in connection with the improper election of Defendants Flower, Gotfried, and Padgett.

**COUNT TWO**
**Against the Individual Defendants**
**for Breach of Fiduciary Duties**

161.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

162.    The Individual Defendants owed and owe fiduciary duties to Freshworks.  By reason of their fiduciary relationships, the Individual Defendants specifically owed and owe Freshworks the highest obligation of good faith and loyalty in the administration of Freshworks'

affairs, including assuring that Freshworks complied with state and federal laws governing, among other things, the making of truthful, complete, and accurate public statements regarding the Company's financial condition and business prospects. The Board also had specific duties as defined by the Company's corporate governance documents and principles that, had they been discharged in accordance with the Board's obligations, would have prevented the misconduct and consequential harm to Freshworks alleged herein.

163. The Individual Defendants ignored their duties. The Individual Defendants failed to make a good faith effort to correct the problems or prevent their occurrence.

164. The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned, and abdicated their responsibilities and duties regarding prudently managing the business of Freshworks in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, the Individual Defendants breached their duties of good faith and loyalty in the management and administration of Freshworks' affairs and in the use and preservation of Freshworks' assets.

165. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Freshworks has sustained significant damages, not only monetarily, but also to its corporate image and goodwill. Such damages include, among other things, the costs of defending and resolving the pending Securities Class Action.

166. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

**COUNT THREE**
**Against the Individual Defendants for Contribution for Violations of 21D of the Exchange Act**

167. The conduct of the Individual Defendants, as described herein, has exposed the Company to significant liability under various federal securities laws by their misconduct.

168. Freshworks is named as a defendant in related securities class action lawsuit that alleges and assert claims arising under the federal securities laws. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.

If Freshworks is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Individual Defendants as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. The Company is entitled to contribution and indemnification from the Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

169.    As officers and directors, the Individual Defendants had the power or ability to, and did, control or influence, either directly or indirectly, Freshworks' general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

170.    The Individual Defendants are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

171.    The Individual Defendants have damaged the Company and are liable to the Company for contribution.

**COUNT FOUR**
**Against the Individual Defendants**
**for Aiding and Abetting**

172.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

173.    Each of the Individual Defendants has acted and is acting with knowledge of or with reckless, or grossly negligent, disregard to the fact that the Individual Defendants are in breach of their duties to the Company and have participated in such breaches of duties.

174.    In committing the wrongful acts, each of the Individual Defendants has pursued or joined in the pursuit of a common course of conduct. They have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided and abetted, or assisted, each other in breaching their respective duties.

175.    Because the actions described herein occurred under the Board's supervision and authority, each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

176.    Each of the Individual Defendants aided and abetted each other and rendered substantial assistance in the wrongs complained of herein.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays for relief and judgment, as follows:**

(a)    Declaring that Plaintiff may maintain this action on behalf of Freshworks and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants violated Section 14(a) of the Exchange Act;

(c)    Declaring that the Individual Defendants have breached and aided and abetted the breach of their fiduciary duties to Freshworks;

(d)    Directing the Company to take all necessary actions to implement and maintain an effective system of internal controls and meaningful Board oversight;

(e)    Determining and awarding to Freshworks the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(f)    Ordering disgorgement of profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties;

(g)    Awarding Freshworks restitution from the Individual Defendants, and each of them;

(h)    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(i)    Granting such other and further relief as the Court may deem just and proper.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1

**IX.    JURY DEMAND**

2

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

3

Dated: March 17, 2023                                    **WEISS LAW**

4

**OF COUNSEL:**                              By:    _/s/ Joel E. Elkins_

5
Joel E. Elkins
**WEISS LAW**                                        611 Wilshire Blvd., Suite 808

6
David C. Katz                                        Los Angeles, CA 90017
Mark D. Smilow                                      Telephone:  310/208-2800

7
305 Broadway, 7th Fl.                              Facsimile:   310/209-2348
New York, NY 10007

8
Telephone: (212) 682-3025                        *Attorneys for Plaintiff*
Facsimile: (212) 682-3010

9
Email: dkatz@weisslawllp.com
          msmilow@weisslawllp.com

10

Joshua M. Rubin

11
Jonathan Meer
4 Brighton Rd., Ste. 204

12
Clifton, NJ 07014
Email: jrubin@weisslawllp.com

13
          jmeer@weisslawllp.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT